UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-457-H

TIM NGUYEN                                                                   PLAINTIFF

V.

UNIVERSITY OF LOUISVILLE, et al.                           DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Tim Nguyen ("Nguyen") was a post-graduate engineering student at the University of Louisville ("U of L" or the "University"). Over a period of years, a female student made three separate accusations of harassment against Nguyen. University officials investigated each allegation and after the last one, they expelled him in May of 2004. After an appeal, the University reversed its decision and reinstated Nguyen. Its disciplinary actions, however, delayed Nguyen's graduation by five months.

Pursuant to 42 U.S.C. § 1983, Nguyen has filed suit against U of L, the Board of Trustees and various university administrators alleging violation of his rights under the due process and equal protection clauses of the Fourteenth Amendment. Discovery is now complete and both parties have moved for summary judgment. The administrative appeals process has determined that U of L's initial disciplinary action was improper. That process took longer than provided by the University rules. Regardless of the initial misjudgments and the subsequent delay, the Court does not find that the procedures constitute a violation of Plaintiff's federal due process rights.

I.

For purposes of this motion, the material events are undisputed. The parties differ on the legal significance of the events.

Nguyen is a Vietnamese national who first came to Louisville, Kentucky with his family in 1994. Nguyen enrolled at the U of L Speed School of Engineering in 1999 after attending Jefferson Community College part-time for two years, and graduated with an undergraduate and a masters degree in May of 2002. Thereafter, Nguyen began pursuing a Ph.D. in industrial engineering.

Just a few weeks after Nguyen began the doctorate program, a fellow Speed School student Ginger Whitaker Richmond ("Whitaker") filed an incident report with U of L's Department of Public Safety alleging that Nguyen had sent harassing e-mail messages to her. The University categorized as behavior prohibited by Section 8(t) of the University of Louisville Code of Student Conduct which prohibits intentionally threatening behavior.[1]

University officials began an investigation. Detective Jeffrey Jewell ("Jewell") from the Department of Public Safety met with Nguyen to discuss the allegations. Following the meeting, Nguyen signed a statement admitting that he had sent a number of emails to Whitaker and that he

---

[1] Section 8(t) of the U of L Code of Student Conduct provides:

> Engaging in intentional conduct directed at a specific person(s) which seriously alarms or intimidates such person(s) and which serves no legitimate purpose. Such conduct may include, but is not limited to: explicit or implicit threats, including gestures which place a person in reasonable fear of unwelcome physical contact, harm or death; following a person about in a public place or to or from his or her residence; making remarks in a public place to a specific person(s) which are by common usage lewd, obscene, expose a person(s) to public hatred or that can be reasonably expected to have tendency to cause acts of violence by the person(s) to whom the remark is addressed; communicating through electronic mail or other electronic means, or anonymously by voice or graphic means or making a telephone call whether or not a conversation ensues.

2

had never received a single reply.  He agreed not to have any contact with Whitaker in the future.

About eight months later, on January 21, 2003, Whitaker filed another Department of Public Safety complaint for alleged stalking by Nguyen.  She also filed an incident report citing harassment and pursued a grievance against Nguyen pursuant to Article 6.8 of the University's governing document, the Red Book.  Following an interview with University Human Resources officer Malinda Durbin ("Durbin"), Whitaker pursued the complaint with Alvin Herring ("Herring"), the Assistant Vice President for Student Life, and Michelle Clemons ("Clemons"), the Associate Director of Student Life, pursuant to Section 9 of the Code of Student Conduct.

In that complaint, she alleged that Nguyen had been following her around school, going to her classes, and watching her every day for a nine-month period.  On February 6, 2003, Clemons met with Whitaker to discuss her allegations.  Five days later, on February 11, 2003, Clemons and Herring met with Nguyen as well.  During that meeting, Clemons and Herring notified Nguyen of the nature of the allegations.  They showed Nguyen a copy of the complaint but he stated that he was not prepared to discuss specifics of the allegations.  He denied harassing Whitaker in any way.

On February 13, 2003, Clemons sent Nguyen a letter advising him that he would be placed on University-wide probation for the remainder of his time on campus.  The letter stated in bold language that he should not have contact of any kind with Whitaker.  It also provided that violation of the letter's no-contact directive would lead to "[i]nterim suspension, pending a formal disciplinary hearing, which would likely result in your permanent removal from the University of Louisville."

Whitaker filed an additional incident report with the Department of Public Safety for

harassment on February 4, 2004. Whitaker filed a formal complaint, for the second time, with the Office of Campus Life. Clemons notified Nguyen that he had been suspended pending a formal hearing for violating the terms of a previous no contact directive contained in her February 13, 2003 letter in a letter dated February 20, 2004.

One week later, by a letter dated February 27, 2004, Monica Jones ("Jones"), Assistant Director of Student Life, informed Nguyen of the specific charges against him. She set a hearing for March 11, 2004. Specifically, she notified him that he was charged with violating Sections 8e, 8p, and 8t of the Code of Student Conduct for violating a previous disciplinary action, failing to comply with directions of University officials, and for continuing to engage in behavior which "seriously alarms or intimidates such person(s) and which serves no legitimate purpose." Nguyen retained counsel, who requested a continuance and his request was granted. On March 11, Nguyen and his attorney met Office of Student Life representatives to discuss the process and the charges against him.

Nguyen received a detailed list describing the factual allegations against him. A short time later Jones again described the nature of the charges, the date and the time of the hearing, which was scheduled to take place on April 14, 2004. She also disclosed a copy of the Code of Student Conduct. After a second continuance the hearing finally took place on April 29, 2004. Nguyen's lawyer was allowed to appear at the hearing but he could not and did not participate.

After a two-day hearing, the hearing panel issued its findings of fact with recommended sanctions on May 4, 2004. The panel found that: (1) Nguyen's actions "seriously alarmed" Whitaker and (2) that he violated that no contact directive outlined in Clemons's February 13, 2003 letter. The panel recommended: (1) disciplinary expulsion with eligibility for readmission

January 1, 2005; (3) "persona non grata" status for the duration of the expulsion; and (3) continuation of the no contact directive previously outlined by Clemons in her letter. Alvin Herring issued the final decision. He decided to exclude Nguyen permanently from the University. Herring's letter advised Nguyen of his right to appeal.

Nguyen did appeal. He submitted an appellate brief drafted by counsel on June 2, 2004. The University Student Appeals Board ("Appeals Board") met to discuss the appeal on August 6, 2004. Two weeks later, the Appeals Board recommended that Nguyen be reinstated, finding that it was reasonable to have expelled Nguyen based on the evidence presented. Nguyen was reinstated on August 27, 2004. He received his Ph.D. in May of 2005.

II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Court must consider first which of the named defendants can be held liable for Nguyen's alleged injuries. Because Nguyen has already received his Ph.D., the only remedy potentially available to him is an award of monetary damages. State governments and their agencies are immune from a suit for monetary damages under 42 U.S.C. § 1983. *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (citation omitted). The University of Louisville is a Kentucky state agency. *Martin v. University of Louisville*, 541 F.2d 1171, 1174-75 (6th Cir. 1976). Accordingly, the University, the Board of Trustees and the University officials sued in their official capacity are

5

entitled to Eleventh Amendment immunity from Nguyen's federal claims. *Hutsell* 5 F.2d at 1002-03. The only remaining claims are those against the named University officers in their individual and personal capacities, for which the Eleventh Amendment provides no immunity. *Id.* at 1003.[2]

Because those officers are government officials who perform discretionary functions, qualified immunity protects them from civil damages suits arising out of the performance of their official duties unless they violate "'clearly established constitutional rights of which a reasonable person would have known.'" *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 207-208 (6th Cir. 1998) (quoting *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)). In qualified immunity analysis, a court must consider two questions: (1) did a constitutional violation occur at all; and (2) did the violation involve clearly established constitutional rights of which a reasonable person would have known. *Id.* Nguyen alleges that the U of L officials' actions during the disciplinary proceedings violated his constitutional rights to procedural due process, substantive due process and equal protection. The Court will address each of these claims in turn.

### III.

In the Sixth Circuit, due process "is implicated by higher education disciplinary decisions." *Flaim v. Med. College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005); *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245 (E.D. Mich. 1984) (finding Due Process Clause implicated in suspension from university for cheating); *see also Goss v. Lopez*, 419 U.S. 565, 575 (1975)

---

[2] The parties named in their individual capacities in the complaint are Denise Gifford, Alvin Herring, Michelle Clemons and Monica Jones. Based on the above analysis, the Court may assert jurisdiction over the claims against them and may properly reach the merits.

(liberty and property interest implicated in high-school suspension); *Board of Regents v. Roth*, 408 U.S. 564, (1972); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988) (a student's interest "in pursuing an education is included within the fourteenth amendment's protection of liberty and property"). Generally, there are two basic due process requirements: (1) notice and (2) an opportunity to be heard. *Flaim*, 418 F.3d at 633.

The amount of due process required by the Constitution will vary according to the facts of each case and is evaluated largely within the framework laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Supreme Court has instructed courts to look at three factors to determine the nature of due process required: (1) the nature of the private interest affected–that is, the seriousness of the charge and the potential sanctions; (2) the danger of error and the benefit of additional or alternate procedures; and (3) the public or governmental burden were additional procedures mandated. *Mathews*, 424 U.S. at 335; *Flaim*, 418 F.3d at 635.[3]

Plaintiff's due process claims concern University officials' actions prior to the suspension and then prior to the expulsion. Plaintiff focuses on the pre-expulsion actions. The Court will review each. The issues are similar and related.

A.

Nguyen alleged that the University violated his due process rights by suspending him on February 20, 2004 without a formal hearing. The suspension extended three months before the

---

[3] The University of Louisville failed to follow its own procedural rules during the course of the investigation and expulsion of Nguyen. However, a university's violation of its own procedural rules regarding disciplinary proceedings does not necessarily constitute a due process violation. *London v. Directors of the Dewitt Pub. Schs*, 194 F.3d 873, 877 (8th Cir. 1999) ("It is true that the school district violated its own rules by not supplying plaintiff's counsel with the statements of two witnesses in advance of the hearing. This violation is not to be condoned, but it does not automatically amount to a violation of the Fourteenth Amendment.").

7

formal disciplinary hearing occurred. Because the suspension was only temporary, the private interest affected was minimal compared to the interest affected by U of L's ultimate decision to expel him. *See Flaim*, 418 F.3d at 638 (applying *Matthews* and recognizing the "lifelong impact that expulsion [from an institution of higher learning] can have on a young person"). Therefore, according to *Matthews*, fewer procedural protections were required. *Matthews*, 424 U.S. at 335.

The Due Process Clause does not require a particular kind of investigation to support a temporary suspension of school privileges pending a formal hearing on a disciplinary matter. What is required is adequate notice and an opportunity to be heard. *See Flaim*, 418 F.3d at 635. More to the point, in *Goss v. Lopez* the Supreme Court recognized that "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and hearing should follow as soon as practicable." *Goss*, at 582-83. Here, because of the history of complaints and the evidence discovered in the previous investigations, University officials had legitimate concerns that Nguyen posed a danger to Whitaker. The immediate temporary removal from campus was a reasonable response at the time. Following the suspension, notice and a hearing were provided as soon as practicable. One week after Nguyen was notified of his suspension, Jones, the Assistant Director of Student Life, informed Nguyen of the specific charges against him by letter dated February 27, 2004, and scheduled a hearing for March 11, 2004.[4] Therefore, the Court concludes that Nguyen's suspension comported with the obligations of due process.

---

[4] Although the University's internal rules required the University to conduct a hearing within ten days of a disciplinary suspension, the failure to follow internal rules taken alone does not establish a constitutional violation. *London*, 194 F.3d at 877.

Even if suspending Nguyen without a pre-suspension hearing violated the Due Process Clause, the named U of L officials are entitled to qualified immunity because the suspension did not violate "'clearly established constitutional rights of which a reasonable person would have known.'" *Salehpour*, 159 F.3d at 207-208. At the time of Nguyen's suspension in 2004, no Sixth Circuit or Supreme Court decision clearly established that a graduate student, such as Nguyen, has a constitutionally protected property interest in continuing his studies at a public university. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 248-249 (6th Cir. 2003) (plaintiff student "gives us little to go on here" in determining whether her continued studies as a medical student are constitutionally protected); *see also Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F. Supp. 2d 621, 627 (W.D. Mich. 2001) ("it is not clear that a university student has a property interest in continuing his studies"). Not until 2005 did the Sixth Circuit Court of Appeals acknowledge that such a property right exists. *Flaim*, 418 F.3d at 633.

Moreover, because there was such an apparent tension between Nguyen's due process rights and the University's concern for Whitaker's well-being, Sixth Circuit case-law supported the University's decision to temporarily suspend him pending a formal hearing on the merits. *See Hill*, 182 F. Supp. 2d at 630 (holding that a public university could immediately suspend an undergraduate student based on its perception that the student posed a continuing threat to the school and to the student body provided that the university provided a hearing before an unbiased panel immediately after the suspension took effect). Therefore, the named U of L officials are entitled to summary judgment on Nguyen's claim regarding the constitutionality of his suspension.

Nguyen's final pre-suspension charge really has no legal merit whatsoever. He alleges

that Clemons's earlier letter dated February 13, 2003, barring him from being in the physical presence of his accuser, violated his rights to due process. Any such claim is probably barred by the one year statute of limitation applicable to § 1983 claims of this type. The only constitutional interest even possibly affected is that of personal association. *See Thompson v. Ashe*, 250 F.3d 399, 407-408 (6th Cir. 2001); *see also Akers v. McGinnis*, 352 F.3d 1030, 1039-1040 (6th Cir. 2003). It goes with saying, however, such a right does not include the right to associate with one who finds the contact harassing.

The Court concludes that where the safety of another student is at issue, the University may take immediate action to suspend an offending student based upon reliable information, so long as the offending student is given an opportunity to be heard as soon as practicable. Here, the suspension followed by the immediate scheduling of a hearing for two weeks later, complies with the requirements of due process. That the hearing was subsequently delayed until April 29th, in part due to Plaintiff's request for an extension does not change the analysis. Regardless, University officials would be entitled to qualified immunity because they attempted to provide due process, could not have foreseen the delays and would not have known that the entire sequence of events might raise a due process question.

B.

Plaintiff reserves his most serious arguments for his claim that the University's procedures for expulsion violated Nguyen's rights to due process. Nguyen cites the following constitutional errors during the expulsion process: (1) inadequacy of notice; (2) denial of a right to counsel; (3) denial of a right to a fair proceeding; (4) denial of a right to receive written findings of facts and recommendation; and (5) denial of a right to a timely appeal of the school's

decision to expel him. Some of the claims are similar to those already discussed in Section III.A. For the following reasons, the Court concludes that University officials met the requirements of providing Nguyen with appropriate due process throughout the expulsion and appeal process.

Nguyen alleges that U of L failed to notify him of the charges, their factual basis or even the identity of his accuser prior to the hearing. In the context of expulsion from a university, notice satisfies due process if the student "'had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing.'" *Id.* (quoting *Jaksa*, 597 F. Supp. at 1250). Thus, U of L had an obligation to reveal all of that information prior to the hearing. *Flaim*, 418 F.3d at 639 (a university's written notice "'should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations [at issue]'") (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)).

On March 11, 2004, U of L officials sent Nguyen a detailed list of the factual allegations against him. A short time later, in a letter dated March 26, 2004, Jones, the Assistant Director of Student Life, described the nature of the charges and the date and the time of the hearing. She also disclosed a copy of the Code of Student Conduct. Nguyen received notice in plenty of time for a meaningful opportunity to prepare for the hearing. This is all that due process requires. Any failure to inform Nguyen of all of the evidence against him–another procedural error alleged by Nguyen–does not constitute a due process violation. *See id.* at 639. Nguyen may not have fully understood the new charges. However, the evidence clearly establishes sufficient notice for due process purposes.

Nguyen also argues that the February 13, 2003 letter banning him from being in Whitaker's presence was vague and overbroad. The letter stated the following:

11

> You are to have absolutely no contact of any kind with Ms. Ginger Whitaker. This directive includes, but is not limited to, any kind of verbal communication, in person, through the phone, or others; no written communication of any kind; no taking of photographs; no watching, staring or following behaviors from any vantage point; or no presence in or around any of Ms. Whitaker's classes. In addition, if you see Ms. Whitaker, you should immediately change your direction so that she does not find herself in your proximity.

The vagueness doctrine states that a law is unconstitutionally vague if it does not give a "'person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Norton v. Ashcroft*, 298 F.3d 547, 553 (6th Cir. 2002) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). If anything, the letter seems absolutely blunt about the kind of contact, no matter how incidental, that was prohibited.[5]

Nguyen argues that he was denied the right to counsel at his disciplinary hearing. In *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1252 (E.D. Mich. 1984), the court noted that a right to counsel may exist if "an attorney presented the University's case, or the hearing [was] subject to complex rules of evidence or procedure." Prior to the hearing, U of L notified Nguyen that his attorney could be present at the hearing, but that he could not participate. Nguyen's attorney did attend the hearing, but Nguyen was not permitted to consult with his attorney nor was the attorney permitted to participate in the proceedings. Here, the hearing was not procedurally complex and U of L did not use an attorney. There were no rules of evidence. Nguyen was provided with an opportunity to appear in person to present his defense. There is no

---

[5] Nguyen also had other notice that the charged conduct was prohibited. Rule 8(t) of the Code of Student Conduct, which has not been challenged as vague or overbroad, prohibits threatening and harassing conduct and carries expulsion as a potential penalty. Nguyen was alleged to have been following Whitaker around campus and spying on her after she told him that his physical presence frightened her. If these allegations were true, the conduct would violate the clear terms of Rule 8(t). Although the hearing panel expelled him in part because he violated the no-contact directive spelled out in the letter, its written findings indicate that the Panel also expelled him for "[e]ngaging in intentional or reckless conduct that seriously alarms, intimidates or harasses others and serves no legitimate purpose" in violation of Rule 8(t).

evidence that the hearing was so complex that Nguyen was unable to understand the proceedings for any reason or that he needed an attorney to present his case. *See also Newsome v. Batvaia Local School Dist.*, 842 F.3d 920 (6th Cir. 1988) (students in disciplinary proceedings at most have the right to advice of a lawyer).

Nguyen argues that U of L's use of evidence about his prior contact with Whitaker and about a website allegedly devoted to Whitaker created an unfair hearing. "Although remaining fair to the accused, student disciplinary hearings follow flexible rules and need not conform to formal rules of evidence." *Nash v. Auburn University*, 812 F.2d 655, 665 (11th Cir. 1987); *see also Flaim*, 418 F.3d at 635 ("neither rules of evidence nor rules of civil or criminal procedure need be applied"). Evidence of Nguyen's relationship with Whitaker prior to January 2004 and evidence about the website would be admissible under Fed. R. Evid. 404(b) as evidence of "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In this case, the challenged evidence tended to prove that Nguyen had developed a long-term fixation on Whitaker. This evidence is relevant to Nguyen's intent and Whitaker's allegedly reasonable fear during the period in question. Therefore, the its admission did not deprive Nguyen of a fair hearing.

Nguyen argues that he was denied due process because the hearing panel's written findings and recommendations were incomplete. Specifically, he asserts that the panel failed to make a written finding that Nguyen's conduct served "no legitimate purpose," which is a necessary element of an offense under Rule 8(t). However, the Sixth Circuit has indicated that there is no constitutional right to written findings of fact in an academic disciplinary hearing in the first place. *Flaim*, 418 F.3d at 641 (the plaintiff "cannot identify . . . any constitutional right

13

to written findings of fact in an academic disciplinary hearing of this ilk and we accordingly reject his claim"). Therefore, the Court concludes that there is no constitutional right to written findings which incorporate every element of an offense under the relevant rules of student conduct.

Finally, Nguyen argues that he was denied his right to a timely appeal in violation of the Due Process Clause. U of L's internal rules of procedure require the Appeals Board to transmit a decision on a student's appeal within fourteen days of the written request for the appellate review. Nguyen submitted his request for an appellate review on June 2, 2004. The Appeals Board did not issue its decision reinstating Nguyen until August 22, 2004. While this delay may have been unwarranted, it does not adversely affect the due process analysis. The Sixth Circuit has said that once a university conducts an academic disciplinary hearing that satisfies due process, there is no right to an appeal at all. *Flaim*, 418 F.3d at 642. Accordingly, affording Nguyen an appeal actually means that U of L may have exceeded the bare minimum of its due process requirements despite the fact that the Appeals Board's decision was delayed.

IV.

Nguyen also alleges that U of L violated his substantive due process rights in that the university's action in expelling him "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). When analyzing an official's conduct, the Court will find a substantive due process violation if the acts were "unreasonable and arbitrary and 'may not take place no matter what procedural protections accompany them . . ..'" *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (quoting *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir. 1985) (en banc)). Nguyen alleges that Henning, who was not even present at the hearing, unilaterally

14

decided to expel him and that Henning's decision was unsupported by the evidence. Ultimately, the Appeals Board agreed with Nguyen and overturned Henning's decision. However, that does not mean that Henning's decision to expel Nguyen violated Nguyen's substantive due process rights. Nguyen had been charged with a serious offense that threatened the safety of the University's students. Although the Appeals Board decided that there was insufficient evidence to support the expulsion, this Court concludes that the decision to expel him did not shock the conscience in the constitutional sense.

V.

Nguyen's section 1983 claim against the U of L officials also includes an allegation that they violated his Fourteenth Amendment right to equal protection. To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996) (citation omitted). Nguyen has presented no evidence whatsoever of intentional discrimination on the part of Defendants. Therefore, Defendants are entitled to summary judgment on that claim as well.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record